Copy

**IN THE SUPERIOR COURT
OF GUAM**

SUPERIOR COURT
OF GUAM

2012 JAN -7 AM 11: 35

GUAM WATERWORKS AUTHORITY,   )
                                        )
              Petitioner,   )
                                          )
      vs.                          )
                                          )
GUAM PUBLIC UTILITIES COMMISSION, )
                                          )
            Respondent.   )
                                          )

Special Proceedings Case no. SP118-11

**DECISION AND ORDER**
re: Petition for Judicial Review
&
Declaratory Relief

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on December 7, 2011. The Guam Waterworks Authority ("GWA") was represented by Attorney Terrence M. Brooks. The Guam Public Utilities Commission ("PUC") was represented by Attorney Frederick J. Horecky. After considering the matters presented, the Court now issues the following decision and order granting GWA's petition for judicial review. Even though the PUC has the authority to examine GWA's compliance with all applicable laws, make recommendations to GWA, and even bring a suit against GWA, the Court finds the PUC exceeded its statutory authority when it ordered GWA to pay to pay the Government of Guam $18,333,333.00.

## BACKGROUND

On November 3, 2005, Public Law 28-71 ("P.L. 28-71") was enacted. The legislative intent behind P.L. 28-71 was to improve the conditions of Guam's water and wastewater infrastructure. The Guam Legislature determined that the new construction upgrades that will be needed are estimated to cost approximately $220,000,000.00. The Guam Legislature also determined that additional costs were required for rebuilding, rehabilitating, and modernizing

ORIGINAL

the system which is expected to cost an additional $230,000,000.00.[1] Based on P.L. 28-71, GWA issued $101,175,000.00 in revenue bonds on December 7, 2005.

On May 17, 2010, Public Law 30-145 ("P.L. 30-145") was enacted. P.L. 30-145 amended P.L. 28-71 to the extent the principal amount of bond was increased from $220 million to $240 million.[2] Furthermore, P.L. 30-145 added the following language: "Twenty Million Dollars ($20,000,000.00) principal amount *shall* be used to pay the balance of the government of Guam Limited Obligation (Section 30) Series 2001A bond and any other portions of Bonds or Loans paid for by General Fund revenues for which the Guam Waterworks Authority has received proceeds." Shortly thereafter, GWA issued $118,825,000.00 in revenue bonds on November 23, 2010.

On January 12, 2011, GWA petitioned the PUC for approval of its proposed projects funded by GWA's 2010 Series Bond proceeds. On January 31, 2011, the PUC issued an Order authorizing GWA to utilize the proceeds from the 2010 Series Bond to fund the proposed projects. On that same day the Commissioners requested a legal opinion on whether P.L. 30-145 and its mandates should be considered by the PUC prior to approving any future use of bond funds by GWA, and what impact P.L. 30-145 has upon GWA's future use of bonds.

On April 11, 2011, the Administrative Law judge of the PUC ("ALJ") issued a Report outlining his opinion and recommendations on P.L. 30-145. On May 4, 2011, the ALJ filed a

---

[1] Thus, according to P.L. 28-71 GWA needed approximately $450,000,000.00 to improve the conditions of Guam's water and wastewater infrastructure.

[2] P.L. 30-145 also amended the interest rate amount from 6.5% to 7.5%.

ORIGINAL

Supplemental Report. Shortly thereafter, on May 31, 2011, the ALJ filed a Status Report.[3] On June 2, 2011, the PUC issued an order requiring GWA to pay the Government of Guam $18,333,333.00. The PUC based its decision on the ALJ's analyses in the above mentioned Reports.[4]

Shortly thereafter, GWA filed its Petition for Judicial Review requesting the Court declare that the PUC exceeded its statutory authority in issuing the order and that the order is in violation of law, vacate the order, and remand the matter back to the PUC. More specifically, GWA argues (1) P.L. 30-145 unconstitutionally impairs GWA's contracts; (2) the PUC exceeded its statutory authority; (3) P.L. 30-145 is not ambiguous; and (4) the PUC's June 2, 2011 Order is not in accordance with law and not supported by substantial evidence.

## DISCUSSION

Guam law governing appeals of PUC's orders can be found in 12 GCA § 12018. That section provides,

> From every order made by the Commission under provisions of this Chapter . . . an appeal shall lie to the Superior Court of Guam within thirty (30) calendar days form the date of the order . . . The appeal shall be deemed a review of an administrative proceeding and shall not be a trial de novo.

12 GCA § 12018. Here, GWA filed its appeal 3 days after the PUC issued its order. Thus, the Court has jurisdiction over the appeal.

The standard of review to be applied by a trial court, upon judicial review of the agency's action, is as follows: "If the agency decision is not in accordance with law or not

---

[3] The Court notes that GWA filed a request, which was granted, for an opportunity to respond to the ALJ's April 11, 2011 Report. GWA also filed a supplemental filing to the ALJ's April 20, 2011 report and a request for reconsideration.

[4] The findings in the Reports were adopted by the PUC in its June 2, 2011 order.

ORIGINAL

supported by substantial evidence, the court shall order the agency to take action according to law or the evidence." 5 GCA § 9240. The court always reviews questions of law de novo. *Nissan Motor Corp. in Guam v. Sea Star Group Inc.*, 2002 Guam 5 ¶ 10. Further, the court must weigh the record as a whole, weighing both the evidence that supports and evidence that detracts from the agency's decision. *Lopez v. Guerrero*, 882 F.Supp 952 (D. Guam App. Div. 1995) citing *Baxter v. Sullivan*, 923 F.2d 1391 (9th Cir. 1991). Additionally, the court must uphold the agency's decision where the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

The court is required to affirm the agency's findings of fact, and any conclusions resulting therefrom, if supported by substantial evidence. *Fagan v. Dell'Isola*, 2006 Guam 11 ¶ 11. This is because a reviewing body "may not substitute its views for those of the [agency], but instead must accept the [agency's] findings unless they are contrary to law, irrational, or unsupported by substantial evidence." *Id.* Thus, the court must first determine whether the Commission's decision was in accordance with law. 5 GCA § 9240. Second, the court must determine whether the Commission's decision was supported by substantial evidence. 5 GCA § 9240. "[S]ubstantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bondoc v. Worker's Comp. Comm'n*, 2000 Guam 6 ¶ 6.

**Whether P.L. 30-145 is Constitutional?**

Before the Court addresses the constitutionality of P.L. 30-145 it must first address whether the issue can be considered by the Court. The PUC asserts that the issue cannot be considered by this Court because GWA never argued that P.L. 30-145 was unconstitutional during the administrative proceedings.

Generally, challenges to the constitutionality of a statute are beyond the power or the

ORIGINAL

jurisdiction of an agency. *Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir. 1985); *Liu v. Waters*, 55 F.3d 421, 425 (9th Cir. 1995). Because the agency lacks the authority to review such claims, a petitioner need not exhaust the claims before seeking judicial review. *Howard v. FAA*, 17 F.3d 1213, 1218 (9th Cir. 1994). Thus, in conjunction with a properly appealed order from the PUC, the Court may consider constitutional claims, regardless of whether GWA presented the claims during the administrative proceedings.

In the instant case, GWA argues that P.L. 30-145 is an unlawful amendment of the terms of P.L. 28-71 because it modifies the contractual obligations of bondholders without their consent and imposes an unfunded mandate upon GWA and its ratepayers in violation of law and the Indenture contracts. GWA asserts that any portion of P.L. 30-145 that is interpreted to require a payment to the government of Guam from bond proceeds should be held an unconstitutional impairment of contractual rights of the bondholders.

The United States Supreme Court has consistently held that state laws authorizing the impairment of municipal bond contracts are unconstitutional. *United Sates Trust Co. of New York, Trustee, v. New Jersey et. al.*, 431 U.S. 1 (1977). Furthermore, "[A] contract is impaired by legislation which alters its terms, imposes new conditions, or lessens its value." *Pierce County v. State*, 148 P.3d 1002, 1009 (Wash. 2006). Here, P.L. 30-145 increased the principal amount of bond from $220 million to $240 million, and it requires GWA to pay the government of Guam $20 million from the proceeds of such bonds. Nothing in the record indicates that the 2005 Bond Series was impaired. Thus, the Court finds that P.L. 30-145 neither alters the terms of GWA's bond indentures, imposes new conditions, nor lessens the value of GWA's bonds.

Additionally, the Court notes that P.L. 30-145 was enacted on May 17, 2010, which is approximately six months prior to GWA's issuance of the 2010 Series Bond. This is significant



because GWA knew about its $20,000,000.00 obligation well before the issuance of the 2010 Series Bond. Thus, the Court finds that P.L. 30-145 could not have impaired the 2010 Series Bond because it came after P.L. 30-145 was passed. Because there is no evidence that P.L. 30-145 impaired any contract of GWA, the Court finds P.L. 30-145 to be constitutional.

**Whether the PUC Exceeded its Statutory Authority?**

The third count of the petition states that the PUC exceeded its authority by ordering GWA to pay the Government of Guam $18,333,333.00. Before the Court addresses this issue it must first address whether the issue can be considered by the Court. The PUC asserts that the issue cannot be considered because GWA never argued that the PUC exceeded its authority during the administrative proceedings.

Because agency action for which there is no statutory authority is void, it is subject to attack at any time in any court, either directly or collaterally. *Daniels v. Industrial Commission et al.*, 201 Ill.2d 160, 166 (Ill. 2002). Even if the parties themselves do not raise the question, courts have an independent duty to vacate and expunge void orders and thus may *sua sponte* declare an order void. *Id.* Thus, in conjunction with a properly appealed order from the PUC, the Court may consider statutory authority claims, regardless of whether GWA presented the claims during the administrative proceedings.

In the instant case, GWA argues that the PUC does not have the ability to make enforcement orders, such as the June 2nd order, after an investigation.[5] On the other hand, the PUC asserts that the statutory and regulatory framework creating the PUC does not limit the role of the PUC to investigations or recommendations. The PUC argues that the enabling

---

[5] The Court recognizes this issue was briefly touched upon by the ALJ in his Reports to the PUC. As mentioned above, those same reports were adopted by the PUC in its June 2, 2011 order.

ORIGINAL

statutes provide it with the authority to make enforcement orders, such as the June 2, 2011 order. More specifically, the PUC argues that it is under an obligation to ensure that any public utility agency is not in violation of, or neglecting to comply with, any territorial or federal law that impacts the PUC's regulation of rates.

Administrative agencies may only act within its powers as specifically granted by the legislature. *See, e.g., Carlson v. Guam Telephone Authority*, 2002 Guam 15 ¶ 9 (citing *Ada v. Guam Telephone Authority*, 1999 Guam 10, ¶ 11). "They are dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common law powers but only such as have been conferred upon them by law expressly or by implication." *Id.* Therefore, the PUC may act only if such authority is within its powers as granted by the Guam Legislature. The PUC's powers, duties, and obligations are set forth in 12 GCA § 12000 *et seq.*

After reviewing the PUC's enabling statutes, the Court finds that the PUC exceeded its authority by ordering GWA to pay the Government of Guam $18,333,333.00. The PUC's powers and duties revolve around the regulatory oversight of rates set by each public utility. This is important to the Court's analyses because the June 2, 2011 order issued by the PUC goes beyond such regulatory oversight. The June 2, 2011 order implies that the PUC has broad authority to issue orders related to the use of bond funds. The Court notes however that nowhere in the enabling statues does it explicitly or implicitly state that the PUC has the authority to make such an order.

12 GCA §§ 12005, 12014 sets forth PUC's options when it discovered that GWA was not in compliance with P.L. 30-145. Those sections provide,

**12 GCA § 12005. Powers.**
        The Commission shall have the following powers which it may exercise in carrying out its mandate to regulate rates: to examine the financial records of each

ORIGINAL

public utility including all bank records; the terms and conditions of any contracts with the United States Government; terms and conditions of any refinancing provisions by the Federal Finance Bank and the Department of the Interior; its costs of operations and costs charged to it by the United States Government; schedules of rates and classifications; the value and condition of the utility's physical property, including that of the United States Government where appropriate; the issuance on behalf of the utility of bonds and the disposition of the proceeds thereof; the volume of unit sales; the amount and disposition of its income; all its financial transactions; its compliance with contracts, covenants, promissory notes and other terms of indebtedness; its compliance with all applicable territorial and federal laws and with the provisions of its franchise, articles of incorporation and enabling legislation. The Commission shall have the power at any time to examine the financial condition of the utility.

**12 GCA § 12014. May Make Recommendations and Bring Suits.**

If the Commission is of the opinion that any public utility is violating or neglecting to comply with the terms of its loans and contracts, or with any territorial or federal law, or any provisions of its franchise, charter, enabling legislation or articles of incorporation, if any, or any rule, or order of the Commission; or that any rates, assessment costs, or, charges are unreasonable or unreasonably discriminatory; it shall in writing inform the public utility of its conclusions and recommendations, shall include the same in its annual report, and may also publish the same in such manner as it may deem wise. The Commission may examine into any of the matter referred to in § 12005, notwithstanding that the same may be within the jurisdiction of any court or other body, and when after the examination the Commission is of the opinion that the circumstances warrant, it shall effect the necessary relief or remedy by the institution and prosecution of appropriate proceedings or otherwise before such court or other body, in its own name or in the name or names of any complainant or complainants, as it may deem best.

A closer look at 12 GCA §12014 reveals that "[i]f the Commission is of the opinion that any public utility is violating or neglecting to comply with . . . any territorial or federal law . . . it shall in writing inform the public utility of its conclusions and recommendations." The statute goes on to say that if "the circumstances warrant, it [PUC] shall effect the necessary relief or remedy by the institution and prosecution of appropriate proceedings or otherwise before such court or other body, in its own name or in the name or names of any complainant or complainants, as it may deem best." 12 GCA §12014. Based on the above sections and the PUC's enabling statutes as a whole, the Court finds that the PUC has the power to examine

ORIGINAL

GWA's compliance with all applicable laws, make recommendations to GWA, and even bring a suit against GWA, when it feels that GWA is not in compliance with Guam law. Nowhere in the statutes is there any indication of anything that would give the PUC broad authority to issue orders, such as the June 2, 2011 order, to GWA when it is of the opinion that GWA was not complying with the law. For this reason, the Court finds that the PUC exceeded its statutory authority when it ordered GWA to pay the Government of Guam $18,333,333.00.

## CONCLUSION

Based on the foregoing, the Court finds that although P.L. 30-145 is constitutional, the PUC exceeded its statutory authority in its June 2, 2011 order when it ordered GWA to pay the Government of Guam because nowhere in the statutes is there any indication of anything that would give the PUC broad authority to issue such an order. Therefore, PUC erred when it ordered GWA to pay the Government of Guam $18,333,333.00. Thus, the Court finds that the PUC's decision was not in "accordance with the law" and orders the PUC to vacate its June 2, 2011 order.

SO ORDERED, this _7_ day of _June_ 2012.

Original Signed By:
HON. MICHAEL J. BORDALLO

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

JUN 0 7 2012

James R. Borja
Deputy Clerk, Superior Court of Guam

ORIGINAL